VENUS CASTELLON, PLAINTIFF-RESPONDENT, v. HUDSON COUNTY TREASURER, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 8, 1976—Decided November 22, 1976.

Before Judges CARTON, KOLE and LARNER.

Mr. Harold J. Ruvoldt, Jr., Hudson County Counsel, attorney for appellant (Mr. Gregory P. Kowalski, Assistant County Counsel; Mr. Arthur G. Williamson, Assistant County Counsel on the brief).

Messrs. Carluccio & Carluccio, attorneys for respondent (Mr. Robert J. Carluccio, of counsel and on the brief).

The opinion of the court was delivered by
LARNER, J. A. D. Plaintiff was convicted after a guilty plea of possession of lottery slips in violation of N. J. S. A. 2A:170–18. He then brought an independent action to recover from the Treasurer of Hudson County the sum of $183.58 which had been confiscated from his person at the time of arrest. Defendant denied plaintiff's claim and further filed a counterclaim to recover a penalty of $2,000 from plaintiff pursuant to the provisions of N. J. S. A. 2A: 40–8.

The trial judge dismissed the counterclaim and entered judgment for plaintiff in the amount of $155.18 on a finding that said sum was not used in connection with the gambling offense. Defendant appeals from this determination.

The judge's factual finding that the major portion of the seized moneys represented the balance of the salary received by plaintiff from his employer on the day of arrest and did not constitute illegal contraband under N. J. S. A. 2A:152–7 is reasonably supported by sufficient credible evidence in the record. In view of the limited scope of our review of such a factual finding, we are constrained to affirm the same. State v. Johnson, 42 N. J. 146 (1964).

The appeal from the dismissal of the counterclaim presents an issue of statutory construction which has not been explored in any prior reported opinion. The pertinent statute, N. J. S. A. 2A:40–8, creates a civil penalty of $2,000 to be forfeited to the county by any person who "shall,

within this state, publicly or privately, erect, set up, open, make or draw any lottery prohibited by the laws of this state."

Defendant asserts in his brief that this statute should be accorded an all-embracing construction so that "anyone, who is or has been convicted of a lottery offense under the laws of this State comes within the scope" of the legislation. He argues that the state policy against all types of gambling dictates such an approach; and that the civil penalty statute as an important deterrent outside of the criminal law should be enforced to carry out that policy.

Based upon this premise it is urged that the facts in the record herein establish that plaintiff is an offender within the ambit of the civil penalty statute, whether he be considered a mere possessor of a lottery slip connected with his own bets or a runner placing bets for his coemployees.

On either assumption, our study of the statute and its historical forebears lead us to a contrary conclusion.

 The statute must be construed in accordance with its plain terms. See, *e. g., Fahey v. Jersey City,* 52 *N. J.* 103, 107 (1968); *Lane v. Holderman,* 23 *N. J.* 304, 313 (1957); *Lopez v. Santiago,* 125 *N. J. Super.* 268, 270 (App. Div. 1973). And, indeed, a penal statute such as the one under consideration should be strictly construed lest it be applied to persons or conduct beyond the Legislature's contemplation. See *Neeld v. Giroux,* 24 *N. J.* 224, 228 (1957); *State v. Leonardo,* 109 *N. J. Super.* 442, 448 (App. Div. 1970).

██ The Legislature did not provide for a civil penalty for all gambling offenses as it may have done, if it so intended, by general language to that effect or by reference to *N. J. S. A.* 2A:121–1 *et seq.,* 2A:112–1 *et seq.* and 2A:170–18. It rather used language which plainly limits the civil penalty remedy against offenders engaged in the actual creation, operation or management of the lottery enterprise. It is intended to affect the higher echelon of those engaged in the lottery business, and not the mere bettors,

runners or lower level employees of the business so as "to discourage operation of gaming enterprises." See *State v. Rucker,* 46 *N. J. Super.* 162, 168 (App. Div.), certif. den. 25 *N. J.* 102 (1957).

We cannot infer a broader intent from words such as "erect, set up, open, make or draw any lottery prohibited by the laws of this state." All these terms connote active participation in the setting up and drawing of the lottery. They do not permit the strained construction advanced by defendant so as to include all the minor underlings who may be subject to the criminal and *quasi*-criminal penalties of the varied types of offenses relating to gaming. If the Legislature has seen fit to impose the additional civil penalty as a deterrent against the most significant participants of the lottery business, it is beyond the realm of judicial power to create an additional penalty for those engaged in lesser functions of such an operation.

The civil penalty statutes relating to gambling offenses can be traced back to 1760, when gaming plagued the Colony of New Jersey as it does today. The 1760 act (*L.* 1760–1763, *c.* XIII, *pp.* 58–59) provided that one who purchases or sells lottery tickets (excepting those authorized by law) shall forfeit five pounds to anyone who brought suit, with half of the recovery going to the person bringing the action and half to "the Poor of the Township."

In 1774 the Colony adopted "An Act more effectually to prevent the erecting of Lotteries and selling of Lottery tickets within this Colony." *L.* 1769–1783, *c.* XI, *pp.* 91–93. Section II of this act used the strikingly similar phraseology of *N. J. S. A.* 2A:40–8, namely, that no person "shall erect, set up, make or draw any Lottery" and provided for a forfeiture of the sum intended to be "disposed of by such Lottery" at the suit of the overseer of the poor. Section III continued the civil penalty of three pounds against those who sell or offer to sell illegal lottery tickets. The purchaser was eliminated from the civil sanction.

In 1797 the State of New Jersey passed "An Act for suppressing of lotteries." *Paterson Laws* 227. This statute repealed the prior acts and substantially reenacted the language of § II of the 1774 statute. In addition, it created a $2,000 civil penalty for those who "erect, set up, open, make or draw * * * lotteries." However, in § III of the act, persons involved in any phase of selling, purchasing, advertising or promoting lottery tickets were made subject to a civil penalty of only $30. This section was supplemented in 1844 by eliminating purchasers from the sanctions contained therein. *L.* 1840–1844, *pp.* 179–180.

In the general revision of the New Jersey statutes in 1877, § II of the 1797 law imposing a civil penalty of $2,000 was reenacted while § III creating a $30 penalty for sale and other lottery activities was omitted. *Revision* 1877, pp. 458–459. The $2,000 penalty provision was subsequently carried over in *Compiled Statutes of New Jersey,* 1709–1910, p. 2625 (1911), and retained in substantially the same terms in all subsequent revisions of the statutes to its present form in *N. J. S. A.* 2A:40–8.

The significance of the foregoing historical review of the legislation is clear. In the 1797 act, those who "erect, set up, open, make or draw a lottery" are distinguished and treated differently from those who sell or participate in lottery activities on a lesser scale, with the former subject to a civil penalty of $2,000 and the latter subject to a penalty of $30. Subsequent legislation completely eliminated the civil penalty for the sellers, purchasers or employees of a lottery enterprise, and retained only the $2,000 penalty for the special class of offenders who create and operate a lottery.

From this it is fair to deduce that the present enactment was intended to embrace a particular class of offenders in the higher rank of lottery entrepreneurs and not the lower echelon of lottery law violators, such as bettors, possessors of lottery slips, runners and bet-takers.

In view of the foregoing, the judgment is affirmed as to to the main action and counterclaim.