121 N.J. Super. 395 (1972)
297 A.2d 216
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT B. TAYLOR, III, DEFENDANT.
Superior Court of New Jersey, Bergen County District Court, Criminal Division.
November 9, 1972.
*396 Mr. Theodore Carron, Assistant Prosecutor, for plaintiff.
Mr. Louis J. Dinice for defendant.
HUOT, J.D.C.
This is a complaint charging defendant with violating N.J.S.A. 2A:170-29(2)(b).
On August 1, 1972, at about 2 P.M., defendant Robert B. Taylor, III was observed by police officers to be standing on Shaler Boulevard, Ridgefield, New Jersey and holding a yellow cardboard sign on which the words "RADAR AHEAD" were plainly visible. Upon these facts defendant was subsequently arrested and charged as a disorderly person in violation of N.J.S.A. 2A:170-29(2)(b). The pertinent section of that statute reads as follows:
2. Any person who in any place, public or private,
* * *
b. Obstructs, molests or interferes with any person lawfully therein; or
* * *
Is a disorderly person.
It is alleged that defendant, in the act of displaying the above-described sign, is a disorderly person in that he obstructed and interfered with the right of motorists who were driving on Shaler Boulevard at that time, and the right of the police officers to control, through the operation of radar equipment, the rate of speed of motorists driving on Shaler Boulevard. The issue to be resolved by this court, therefore, is whether or not the act of holding a sign stating "RADAR AHEAD," while standing in the field of vision of passing *397 motorists, should be construed as a disorderly act within the purview of the statutory language expressed in N.J.S.A. 2A:170-29(2)(b).
"Disorderly conduct" is not an offense known to common law. Convictions for acts constituting disorderly conduct must be for some offense prohibited by statute. State v. Labato, 7 N.J. 137 (1953); Breisia v. Court of Common Pleas, Hudson County, 11 N.J. Misc. 937, 169 A. 335 (Sup. Ct. 1933). Statutory offenses are characterized as being either mala in se or mala prohibita. An act is malum in se if it is inherently and essentially wrong and injurious. Those acts which do not fall within the category of mala in se but which are proscribed by the Legislature, such as the statute involved in the instant case, are mala prohobita: it is not the nature of the act that renders it wrong, but rather the fact that its commission is expressly forbidden by law. Since the illegality of a malum prohibitum act results from positive law, it becomes naturally incumbent upon the courts to construe the statute proscribing the act in conformance with legislative intent and to avoid those constructions which render any part of the statute superfluous. State v. Wean, 86 N.J. Super. 283 (App. Div. 1965); State v. Rullis, 79 N.J. Super. 221 (App. Div. 1963). Case law construing the Disorderly Persons Act has indeed been solicitous of the intent of the Legislature and supportive of the position that such intent is to be discerned from the language of the statute; hence the condemned act must be plainly and unmistakably within the penal statute and not within an arbitarary expansion of the scope of the statute. State v. Leonardo, 109 N.J. Super. 442 (App. Div. 1970); State v. Wenof, 102 N.J. Super. 370 (App. Div. 1968); State v. Smith, 46 N.J. 510 (1966); State v. Gibson, 92 N.J. Super. 397, 400 (App. Div. 1966); State v. Wean, supra, State v. Rullis, supra, State v. Caez, 81 N.J. Super. 315 (App. Div. 1963); Neeld v. Giroux, 24 N.J. 224, 229 (1952); Halsted v. State, 41 N.J.L. 552, 597 (E. & A. 1899).
*398 With these precepts in mind, we now turn to an examination of the statute in question. It is indisputable that the protection of the statute does extend to police officers who were controlling the rate of speed of motorists on Shaler Boulevard. Cf. State v. Furino, 85 N.J. Super. 345 (App. Div. 1964). What is questionable is whether or not defendant, by the act of displaying the sign in question, did "obstruct" or "interfere" with these police officers and the motorists on Shaler Boulevard.
Black's Law Dictionary (4th ed. 1968) defines "obstruct" as to hinder or prevent from progress, check, stop, also to retard the progress of, or make accomplishment of difficult and slow; and the word "interfere" as to check, hamper, hinder, disturb, intervene, intermeddle, interpose, enter into, or take part in the concerns of others. "Molest" means to disturb, interfere with, or annoy; inconvenience. American Heritage Dictionary of the English Language, (1st ed. 1969, 1970).
This court finds no merit in the allegation that defendant did "obstruct" or "interfere" with motorists who were driving on Shaler Bouvelard. The motorists who were driving on Shaler Boulevard at the time defendant was holding the sign in question were not inconvenienced in any way. Their driving was not "obstructed" by defendant, since he was standing on the side of the road, and the legend on defendant's sign certainly did not "interfere" with their driving. Upon observing the sign motorists had the election to either disregard it or to release the pressure on the pas pedal in attention to defendant's purported warning. It is true that defendant could be construed to "interfere" with the police officers because the message on defendant's sign intermeddled with the concern of the police to discover and apprehend violators of the traffic speed limit. Practical considerations, however, indicate that a conviction resting squarely on a literal definition is not only unsound but also capable of bizarre ramifications. Could we not then conclude that the act of a citizen in alerting the police to a speeding violator *399 is also an "interference"? Should any act which frustrates the performance of a police officer's duties be considered an "interference"? We cannot allow one definition of one of three verbs used in the statute to detract from the semantic content of the statute as a whole. This court does not deny the well-established rule of statutory construction that penal statutes are to be strictly construed. State v. J.M., 110 N.J. Super. 337 (App. Div. 1970); State v. Leonardo, supra, State v. Fair Lawn Service Center, 20 N.J. 468 (1956); State v. McCall, 27 N.J. Super. 157 (App. Div. 1953), vac. 14 N.J. 538 (1958); State v. Morrison, 25 N.J. Super. 534 (App. Div. 1953); State v. Perretti, 9 N.J. Super. 97 (App. Div. 1950); State v. Carr, 118 N.J.L. 233 (E. & A. 1937), but takes note of the equally well-established rule of law that no rule of strict construction may be used to torture the language of a penal statute beyond its clear meaning and implication. State v. Carbone, 38 N.J. 19 (1962); State v. Provenzano, 34 N.J. 318 (1961); State v. McCall, supra, State v. Meinken, 10 N.J. 348 (1953); State v. Brenner, 132 N.J.L. 607 (E. & A. 1945); State v. Hand, 71 N.J.L. 137 (Sup. Ct. 1904); Stricker v. Pennsylvania R. Co., 60 N.J.L. 230 (Sup. Ct. 1897).
By using the word "interfere" with the physical implicating words of "molest" and "obstruct," it seems clear that the intent of the Legislature was to proscribe that type of conduct which has a direct, tangible and physical impact. Consequently, this court cannot entertain the supposition that the intent of the Legislature, as reflected by the statutory language of N.J.S.A. 2A:170-29(2)(b), would encompass the type of activity engaged in by the defendant. In State v. Furino, supra, the court held that evidence that defendant had attempted to interfere with the arrest of a companion by shouting obscenities at police officers and punching them in the chest sustained a conviction for obstructing and interfering with police officers in a public place, and stated:
*400 We conclude that the elements of an offense proscribed by the statute in question are specific. No man of common intelligence would have to guess at the meaning of the statute, and the conduct condemned is certain. Cf. State v. Monteleone, 36 N.J. 93 (1961); State v. Dennis, 80 N.J. Super. 411 (App. Div. 1963). [at 349 of 85 N.J. Super.]
In Anderson v. Haas, 341 F.2d 497 (3 Cir.1965), the United States Court of Appeals interpreted N.J.S.A. 2A:170-29(2)(b) and stated (at 501), "The statute obviously prohibits any conduct within the limits of the actor's ability to do so."
We conclude that defendant's act of displaying a sign stating "RADAR AHEAD" is not a disorderly act within the meaning of N.J.S.A. 2A:170-29(2)(b). To hold such conduct as "disorderly" would be neither harmonious with the clear meaning of the statutory language nor with the object and intent of the Legislature, as gathered from the whole context of the statute.
Our decision today is in keeping with the First Amendment to the Constitution of the United States.[1] Although defendant's act in displaying the sign stating "RADAR AHEAD" is not particularly meritorious or praiseworthy, it is nevertheless a form of speech that is rigorously protected by the First Amendment. It is well-settled that "The constitutional protection does not turn upon the `truth, popularity or social utility of the ideas and beliefs which are offered,' NAACP v. Button, 371 U.S. 415, 445, 83 S.Ct. 328, 344, 9 L.Ed.2d 405," New York Times Co. v. Sullivan, 376 U.S. 254, 274, 84 S.Ct. 710, 721, 11 L.Ed.2d 686, 701 (1966), and that variations of the theme of freedom of expression may be made only in the presence of a "clear and present danger." Cf. Schenck v. United States, *401 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470, 473 (1919); Cantwell v. Connecticut, 310 U S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213, 1221 (1940); Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 1255, 91 L.Ed. 1546, 1552 (1947); Wood v. Georgia, 370 U.S. 375, 384, 82 S.Ct. 1364, 1370, 8 L.Ed.2d 569, 576 (1962); Edwards v. South Carolina, 372 U.S. 229, 237, 238, 83 S.Ct. 680, 9 L.Ed.2d 697, 703 (1963); New York Times Co v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).
The court finds the defendant not guilty.
NOTES
[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assembly, and to petition the government for a redress of grievances."