146 N.J. Super. 589 (1977)
370 A.2d 499
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT MANNING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 28, 1976.
Decided January 28, 1977.
*590 Before Judges LYNCH, MILMED and ANTELL.
Messrs. Boardman & Epstein, attorneys for appellant (Mr. Barry D. Epstein on the brief).
Mr. C. Judson Hamlin, Middlesex County Prosecutor, attorney for respondent (Mr. Frank H. Graves, Assistant Prosecutor, on the brief).
The majority opinion was delivered by LYNCH, P.J.A.D.
This is an appeal from a judgment of the Middlesex County Court which affirmed, on de novo trial, a judgment of the Woodbridge Municipal Court. Both lower courts found defendant guilty of interfering with a State Trooper's performance of his duties, in violation of N.J.S.A. 2A:170-29(2) (b). The charge and conviction arose out of the following facts.
*591 On November 14, 1975, at about 8 P.M., Trooper Kenna, while proceeding northbound on the New Jersey Turnpike at 70 m.p.h., observed a 1973 Chevrolet approaching from his rear at a high rate of speed. The car passed that of the trooper. He followed and ultimately stopped it and ordered the driver to pull over to the right shoulder. The trooper approached the driver, Robert Wald, detected an odor of alcohol and asked Wald to leave the vehicle so that he could conduct some tests to determine the driver's condition. The officer and Wald went to the rear of the car where Wald was questioned. Defendant, Wald's passenger, got out and joined them at the rear of the car. Trooper Kenna requested defendant to return to his seat in the Chevrolet so that he could talk to the driver with whom he could better deal on a one-on-one basis. He also expressed concern for the safety of all because an oncoming car might strike someone standing on the shoulder of the road. Despite the fact that the trooper three times requested defendant to get back into the car, defendant refused and said "lock me up."
The trooper testified that he would have conducted a more formal and thorough investigation of the driver's condition had he been left alone by defendant and that defendant's actions interfered with his further investigation. The municipal court judge found as a fact that the trooper had to cut short his investigation because of defendant's actions. In affirming the conviction, the County Court judge found as a fact that defendant interfered with the lawful exercise of police duty by the trooper.
On appeal it is defendant's contention that the investigation of the driver's condition had actually been concluded inasmuch as the trooper had already determined that the driver was not intoxicated. For that reason, defendant argues, there was no interference with the investigation. We disagree. The trooper was following routine procedures in attempting to interview the driver to determine whether he was under the influence of intoxicating liquors. It was perfectly reasonable for him to require that he be able to interrogate *592 and observe the driver without any distraction from defendant. It was also in the interest of safety for defendant to remain in the car.
Our dissenting colleague cites several cases[1] presumably in support of his position that N.J.S.A. 2A:170-29(2) "interdicts only conduct which, in a literal sense, intentionally impedes another's right of free physical movement" and, quoting from State v. Smith, 46 N.J. 510, 521 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), that the statute "proscribes conduct which holds the promise of a disorder" involving a breach of the peace.
State v. Profaci, 56 N.J. 346 (1970), as the dissent says, dealt with that part of the statute which concerned the use of loud and offensive language. In obeisance to the constitutional guarantee of freedom of speech the requirement of possible breach of peace has been added in order to constitute a violation of the statute. Here we do not have a charge of indecent language where such addendum is needed or appropriate to sustain the conviction.
Although the cases cited in the dissent involve physical interference with officers or others (State v. Furino, 85 N.J. Super. 345 (App. Div. 1964); State v. Smith, 46 N.J. 510 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966); State v. Guillotte, 10 N.J. Super. 502 (Cty. Ct. 1950)) none of them, except perhaps State v. Taylor, 121 N.J. Super. 395 (Cty. Ct. 1972), hold that the statute is applicable only where there is conduct which impedes another's "physical" movement or "which holds the promise of a disorder" involving a breach of the peace. We agree with the result in Taylor, though not with the court's analysis (at 398-399) of the word "interfere" as used in the statute.
*593 In Haywood v. Ryan, 85 N.J.L. 116 (Sup. Ct. 1913), the court held that there was no testimony whatever that defendant obstructed or interfered with other persons in any manner. As the court said: "* * * on the contrary all that appears is that he was proceeding along the sidewalk of a public highway, without obstructing or interfering with any person beyond the extent to which he occupied the sidewalk." It was because the charge was directed solely to impeding of physical movement, and not any other kind of interference, as here, that the court made the statement that the statute "is intended to apply only to such as shall, by their acts, intentionally obstruct or interfere with the movement of persons lawfully on the street." State v. Guillotte, supra, was likewise directed solely to an issue as to physical obstruction and interference with persons on a sidewalk. State v. Furino, supra, also involved physical interference with the police officers and was not concerned with other kinds of interference such as is involved here. However, in that case the court defined the three verbs, "obstruct", "molest" and "interfere", in N.J.S.A. 2A:170-29, as follows:
The three verbs are definite, clear and distinct, readily understood and employed in the every-day speech of the man on the street. Refined definition is unnecessary. "Obstruct" means to object or come in the way of; to hinder from action; to impede. "Molest" means to interfere with or meddle with unwarrantably. And "interfere" is defined as to enter into or take a part in the concern of others; to intermeddle, intervene. Webster's New International Dictionary (2d ed., 1948); and see 3 Wharton's Criminal Law (Anderson ed. 1957), § 1284, p. 634. [85 N.J. Super. at 348; emphasis supplied]
Clearly, then, the definition of "interfere" is not restricted to physical interference, for it is defined "as to enter into or take part in the concern of others; to intermeddle, intervene." Here the question of the driver's condition vis-a-vis his being under the influence of, or impaired by, alcohol was the concern of the state trooper. The proofs support the conclusion that defendant was taking a part *594 and meddling in that investigation which was none of his concern. In State v. Taylor, supra, the court defined "interfere" as
* * * to check, hamper, hinder, disturb intervene, intermeddle, interpose, enter into, or take part in the concerns of others. "Molest" means to disturb, interfere with, or annoy; inconvenience. American Heritage Dictionary of the English Language, (1st ed. 1969, 1970). [121 N.J. Super. at 398]
Again, the proofs here support the conclusion that defendant hampered, disturbed, intervened and intermeddled in the concern of the trooper in the performance of his duties.
In State v. Smith, supra, the court defined the statutory term "obstruct" to include hindering, citing State v. Furino, supra, 85 N.J. Super. at 348, and added, "and of course `interfere' does not require a total frustration." (46 N.J. at 520).
The dissent's quotation from State v. Smith, 46 N.J. at 521, to the effect that the statute "proscribes conduct which holds the promise of a disorder" involving a breach of the peace, is taken out of context and is misleading as what Chief Justice Weintraub meant in that case. The full context reads:
Defendants say the statute is invalid on its face because it does not require proof of a breach of the peace. We do not understand the police power to be so limited. In any event the statute proscribes conduct which holds the promise of a disorder of that kind, and we have no doubt the State may deal with it punitively on that account. [emphasis supplied]
We conceive that a fair reading of that language indicates that there need not be proof of a breach of the peace to constitute the offense, though conduct of that kind is included in the proscription of the statute. The quoted language, in our opinion, does not indicate that other types of interference, not including a threat of breach of the peace, is excluded from such proscription.
*595 The dissent construes our opinion as being based on "the premise that the policeman can convert the character of an event from nonpunishable to punishment by proclamation alone." The "event" is described as defendant's lack of aggression, intrusiveness and the absence of "threatening or provocative gestures or statements" on his part prior to the trooper's request that he go back into the car  and that request is the "proclamation" to which the dissent refers. The argument begs the question, i.e., whether defendant interfered with the trooper's performance of his duties in investigating whether the driver of the car was under the influence of, or impaired by, alcohol. And the citation of State v. Caez, 81 N.J. Super. 315 (App. Div. 1963), is, in our opinion, irrelevant. It concerned an antiloitering ordinance which the court held unconstitutionally vague for lack of standards as to the definition of "loitering." There is no claim of unconstitutional vagueness in the statute here involved. And the clear definitions of "interfere" in the cases cited above preclude any such construction.
Finally, the dissent argues that if "obstructs, molests or interferes with any person" extends to what is termed the "passive conduct here displayed", such an interpretation "would have to be equally applicable to comparable nonphysical encounters between civilians." We submit that this, too, begs the question, for in the latter instance there would be no "interference" as here.
Lastly, while acknowledging the "possible applicability" of two decisions of this Appellate Court, State v. Taylor, 38 N.J. Super. 6 (App. Div. 1955), and East Brunswick Tp. v. Malfitano, 108 N.J. Super. 244 (App. Div. 1970), our colleague distinguishes them, apparently for the reason that they concerned ordinances which specifically dealt with interference with police officers in performance of their duty.
In our view, Taylor and Malfitano have more significance in our difference with our colleague than he would ascribe to them. First, they construed ordinances which proscribed "interference" with the officers. Second, Taylor construes *596 that word as not requiring that defendant's actions "actually prevented" the officers from performing their duty, contrary to the dissent's original position that there must be "physical" interference to constitute a violation of the statute.
As Judge Goldmann said in Taylor:
It is not a question, as defendant contends, whether they were actually prevented from performing their duties. The ordinance does not require such a showing. The question is solely whether they were interfered with. Such interference occurs if what defendant did was calculated in any appreciable degree to hamper or impede the police in the performance of their duties as they saw them.
"* * * The duty of police officers, it is true, is `not merely to arrest offenders, but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give reasonable directions.' People v. Nixon, 248 N.Y. 182, 188, 161 N.E. 463, 466. Then they are called upon to determine both the occasion for and the nature of such directions. Reasonable discretion must, in such matters, be left to them, and only when they exceed that discretion do they transcend their authority and depart from their duty. The assertion of the rights of the individual upon trivial occasions and in doubtful cases may be ill-advised and inopportune. Failure, even though conscientious, to obey directions of a police officer, not exceeding his authority, may interfere with the public order and lead to a breach of the peace." People v. Galpern, 259 N.Y. 279, 181 N.E. 572, 83 A.L.R. 785 (Ct. App. 1932).
Failure to obey a police order to "move on" can be justified only where the circumstances show conclusively that the order was purely arbitrary and was not calculated in any way to promote the public order. As was said in the Galpern case, the courts cannot weigh opposing considerations as to the wisdom of a police officer's directions when he is called upon to decide whether the time has come in which some directions are called for. [38 N.J. Super. at 29-30; emphasis supplied]
We concede to the state trooper here that discretion which Taylor would bestow upon him. In our view, his request to defendant to return to the car cannot be said to be arbitrary; it was, indeed, entirely reasonable.
And in East Brunswick Tp. v. Malfitano, supra, this court expressedly rejected the contention that to constitute *597 "interference" there must be, as the dissent seems to hold, physical interference. There the court said:
The ordinance provided that "No person shall resist, obstruct or interfere with any township officer * * * in the performance of his duty, nor shall any person disobey the lawful orders or instructions of any such officer * * *." Defendant urges that, properly construed, the ordinance forbade only actual physical interference with the police. We disagree. The interference which the ordinance prohibited encompassed actions calculated in any appreciable degree to hamper or impede the police in the performance of their duty as they saw it. State v. Taylor, 38 N.J. Super. 6, 29-30 (App. Div. 1955). Actual physical interference with the police officer was not a prerequisite to conviction. Id. at p. 29. Cf. Commonwealth v. Rhone, 174 Pa. Super. 166, 100 A.2d 147, 148-149 (Super. Ct. 1953); State v. Johnson, 134 W. Va. 357, 59 S.E.2d 485, 487 (Sup. Ct. 1950). [108 N.J. Super. at 246-247]
We conclude that the findings and conclusions of the county court in adjudging defendant guilty of a violation of N.J.S.A. 2A:170-29(2) (b) are supported by sufficient credible evidence in the record. The conviction is therefore affirmed.
ANTELL, J.A.D. (dissenting).
The majority's reasoning seems to be that by refusing to obey the trooper's instruction to return to the car defendant did "obstruct and interfere" with the trooper in the performance of his duties. In my view this statute interdicts only conduct which, in a literal sense, intentionally impedes another's right of free physical movement. It was not intended as a means of securing obedience to the command of a policeman.
In substance, that portion of the statute under which this conviction was had, N.J.S.A. 2A:170-29(2) (b), provides:
Any person who in any place, public or private, * * * obstructs, molests or interferes with any person lawfully therein * * * is a disorderly person.
Of this enactment it has been said that "no man of common intelligence would have to guess at the meaning of *598 the statute, and the conduct condemned is certain." State v. Furino, 85 N.J. Super. 345, 349 (App. Div. 1964). The court further explained:
The three verbs are definite, clear and distinct, readily understood and employed in the every-day speech of the man on the street. Refined definition is unnecessary. "Obstruct" means to object or come in the way of; to hinder from action; to impede. "Molest" means to interfere with or meddle with unwarrantably. And "interfere" is defined as to enter into or take a part in the concern of others; to intermeddle, intervene. Webster's New International Dictionary (2d ed. 1948); and see 3 Wharton's Criminal Law (Anderson ed. 1957), § 1284, p. 634. [at 348]
It was long ago decided that this statute "is intended to apply only to such as shall, by their acts, intentionally obstruct or interfere with the movement of persons lawfully on the street." Haywood v. Ryan, 85 N.J.L. 116, 118-119 (Sup. Ct. 1913). More recently it has been said that it "proscribes conduct which holds the promise of a disorder"[1] involving a breach of the peace. State v. Smith, 46 N.J. 510, 521 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966). Other cases which have considered this provision accept as fundamental that it is addressed to physical interference with personal movement. State v. Taylor, 121 N.J. Super. 395, 399 (Cty. Ct. 1972); State v. Guillotte, 10 N.J. Super. 502, 503 (Cty. Ct. 1950). State v. Profaci, 56 N.J. 346 (1970), while dealing with that part of the statute which is concerned with loud and offensive language, holds that it too reflects a legislative purpose to preserve the peace and concludes that one who is shown, without more, to have addressed indecent language to a police officer is not guilty of a violation.
*599 The record in this appeal leaves no doubt but that defendant at no time showed any aggression or intrusiveness. He made no threatening or provocative gestures or statements. He said only that he was not feeling well and wanted to stretch his legs. He merely stood there. The act of "interference" consisted only of this. He did not "meddle"; he took no part in what was happening.
I believe the majority would concede that until the request to return to his car was made, defendant's conduct was clearly nonpunishable. By the making of the request this same inoffensive conduct is transformed into an act of obstruction and interference. Thus, it is premised that under this statute the policeman can convert the character of an event from nonpunishable to punishable by proclamation alone. But in State v. Caez, 81 N.J. Super. 315 (App. Div. 1963), the court held that where a loitering ordinance failed to define the offense with sufficient certainty, the action of a policeman in ordering the defendant to "move along" was not enough to cure the defect. If a policeman's order cannot clarify the meaning of a doubtful law, then it certainly cannot change the meaning of one as clear as this.
I have not overlooked the possible applicability of State v. Taylor, 38 N.J. Super. 6 (App. Div. 1955), which states:
Failure to obey a police order to "move on" can be justified only where the circumstances show conclusively that the order was purely arbitrary and was not calculated to promote the public order [at 30]
However, this case involved a local ordinance which specifically declared it to be unlawful for any person to "in any manner interfere with * * * any member of the police force * * * in the lawful discharge of his duty," within a volatile context constituting a clear threat to the public peace.
To like effect is East Brunswick Tp. v. Malfitano, 108 N.J. Super. 244, 246 (App. Div. 1970), a prosecution under *600 a municipal ordinance providing that "No person shall resist, obstruct or interfere with any township officer * * * in the performance of his duty, nor shall any person disobey the lawful orders or instructions of any such officer * * *." There defendant's conviction was affirmed where he refused to comply with a policeman's order to give his name and address. Again, however, this occurred under an enactment which explicitly encompassed the offensive conduct. The difference is that in the statute before us the Legislature has not addressed itself to the concept of "interference" in the special sense which may be applicable to a police investigation.
Although it was the trooper's preference that defendant return to his car, I cannot agree that this statute empowers him to legislate his preference then and there into a duty incumbent upon defendant. Nor is the nature of the duty explained so that its breach can be understood in terms of active obstruction and interference. He simply did not do what the policeman told him to do, and this the latter found distracting. Assuming that the order was lawful, defendant was not charged with disobedience. He was charged, instead, with "interference." Apparently it is of a constructive character and is seen by the majority to have followed from defendant's disobedience and the officer's consequent distraction. But if interference or obstructive conduct is to be measured by its subjective impact upon the complainant  in this case the distraction of the officer from his investigation  it is difficult to conceive of any behavior which, under given circumstances, could not also have the incidental effect of frustrating or distracting an officer who was performing his duty, and therefore be equally punishable.
While I share the majority's anxiety for the security of police officers in hazardous situations, it is not at all clear how the interpretation given protects them when they are in genuine danger. If one seriously intends harm to the policeman, surely he will not be deterred from acting on *601 that intention by an order backed only by the threat of prosecution for disorderly conduct. It is no solution to extend the statute by imposing upon the average peaceable citizen such unexpressed standards of conduct as a court may later divine were intended. In any case, the problem is one which calls for legislative action based upon a careful weighing of the important interests involved.
Penal statutes are subject, above all, to the rule of strict construction so that they not "be applied to persons or conduct beyond the Legislature's contemplation." Castellon v. Hudson Cty. Treasurer, 145 N.J. Super. 134 (App. Div. 1976). They "`are not to be regarded as including anything which is not within their letter as well as their spirit, which is not clearly and intelligently described in the very words of the statute, as well as manifestly intended by the Legislature.'" State v. Cannizzaro, 133 N.J.L. 383, 384 (E. & A. 1945). "`Before a man can be punished, his case must be plainly and unmistakably within the statute.'" State v. Caez, supra, 81 N.J. Super. at 319; State v. Fair Lawn Service Center, Inc., 20 N.J. 468, 472 (1956); State v. Mundet Cork Corp., 8 N.J. 359, 365 (1952); State v. Ruiz, 68 N.J. 54, 67 (1975) (Pashman, J., dissenting); 3 Sutherland, Statutory Construction (4 ed. 1974), § 59.03; 1 Schlosser, Criminal Laws of New Jersey (3 ed. 1970). § 5.5.
Where the Legislature intends to promulgate special standards applicable or relating to problems unique to the exercise of police authority, it leaves no doubt as to its purpose. See, for example, N.J.S.A. 2A:90-4 (assault and battery upon law enforcement officer in performance of duties); N.J.S.A. 2A:148-22.1 (giving false information to law enforcement officer or agency; N.J.S.A. 39:4-91 (giving right of way to emergency vehicle); N.J.S.A. 39:4-103, (exempting police vehicles from speed regulations); N.J.S.A. 39:4-57 (requiring drivers of vehicles to comply with voice or hand instructions by law enforcement officials); N.J.S.A. 39:4-80 (traffic control by officers). It has not *602 done so in this instance, and it seems to me that the majority by its opinion has interpreted this statute to serve a purpose for which it was not intended.
In the face of the wide scope given the term "interfere" it is reasonable to ask by what criteria the line will be drawn between legitimate orders and those addressed to an ulterior purpose, between orders which are reasonable and those which are not. Are we to determine whether the order was given for the reason stated by the officer, or for the reason that he wanted no witnesses to the manner of his investigation or its results? Would the position of defendant herein be any different if the driver of the car was his wife or child and he insisted on being present during the investigation to insure that it was being fairly conducted? Questions of like nature which may be posited are limited only by the range of possible factual circumstances. I think it most unreasonable and unfair to impose upon an untutored citizen the burden of choosing the correct course of action in these uncertain situations at peril of being adjudged a disorderly person.
Finally, although this question is being considered within the context of a police investigation and although my brethren evidently regard this legislation as having special pertinence to police requirements, it cannot be overlooked that there is nothing in the statute or in logic which confines the implications of the majority opinion to cases involving police orders. If "obstructs, molests or interferes with any person" extends, as this court says, to the passive conduct here displayed, such an interpretation would have to be equally applicable to comparable nonphysical encounters between civilians. It is obvious to me that such a result could never have been intended by the framers of this law, but since it appears to be compelled by the principles implicit in the opinion of the majority, and for the reasons previously discussed, I must dissent.
NOTES
[1] State v. Furino, 85 N.J. Super. 345 (App. Div. 1964); Haywood v. Ryan, 85 N.J.L. 116 (Sup. Ct. 1913); State v. Smith, 46 N.J. 510 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966); State v. Taylor, 121 N.J. Super. 395 (Cty. Ct. 1972); State v. Guillotte, 10 N.J. Super. 502 (Cty. Ct. 1950); State v. Profaci, 56 N.J. 346 (1970).
[1] Although the paragraph from which this quotation is taken suggests that such a statute could be valid even where it failed to require that there be proof of a breach of the peace, it left no doubt that at least "the promise of a disorder" was an element of the offense as the statute now reads.