STATE OF NEBRASKA, APPELLEE, V.
KIP P. HOOKSTRA, APPELLANT.
630 N.W. 2d 469

Filed May 22, 2001.   No. A-00-791.

200

Robert F. Bartle, of Bartle & Geier, for appellant.

John C. McQuinn, Chief Lincoln City Prosecutor, for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

## BACKGROUND

In the early morning of March 20, 1999, Kip P. Hookstra, walking with two friends near the intersection of 13th and O Streets in Lincoln, Nebraska, came upon Officer Mitchell Evans of the Lincoln Police Department, who was administering field sobriety tests on an individual. Hookstra and his two friends

crossed 13th Street, walking behind Officer Evans' police car, which was parked along 13th Street. Once the group had crossed the street, they stood on the sidewalk on the northeast corner of the intersection, located about 20 feet from where Officer Evans was conducting the field sobriety tests, and silently watched the investigation.

As Officer Evans walked the person suspected of driving under the influence of alcoholic liquor (DUI) to the back seat of his police car, Hookstra and his friends began to "heckle" Officer Evans and his suspect. Officer Evans testified that Hookstra "was putting his fist in the air and yelling things like 'power to the people'" and was shouting to the suspect that he did not have to cooperate. Officer Evans further testified that Hookstra's "heckling" was not derogatory or abusive, but was distracting and upsetting the DUI suspect so that Officer Evans had to tell the suspect to ignore the heckling. Officer Evans stated that he was concerned for his and the suspect's safety, because the commotion detracted from his ability to pay attention to the traffic around him and to his DUI suspect, who could have potentially been hostile, anxious, or violent, at a time when he was standing in a downtown street at "bar break."

After Officer Evans secured the DUI suspect in the back seat of his patrol car, he "told [Hookstra] that he needed to leave. I told [Hookstra] they had to walk away, just go away." However, Hookstra stood his ground, replying that he was on a public sidewalk and did not have to leave. Meanwhile, Hookstra's friends were tugging on Hookstra's clothing and pleading with him to walk away. After Officer Evans ordered Hookstra to leave two or three times, Officer Evans walked toward the group, which was still standing on the sidewalk, whereupon, Hookstra began to walk backward, facing Officer Evans with his fist raised in the air. Officer Evans did not pursue Hookstra, but instead radioed other officers for help. Two other officers picked up Hookstra about a block from the scene and took him into custody.

Hookstra was charged in the county court for Lancaster County with violating Lincoln Mun. Code § 9.08.050 (1990), which makes it unlawful "for any person to intentionally or knowingly refuse to comply with an order of a police officer made in the performance of official duties at the scene of an

arrest, accident, or investigation." Hookstra filed a motion to quash the complaint, arguing that the ordinance was unconstitutionally vague, overbroad, and uncertain, or that it reached a substantial level of constitutionally protected activity. The motion was overruled, Hookstra eventually went to trial, and he renewed his motion to quash the complaint. We note that for purposes of this appeal, a motion to quash or a demurrer is the proper procedural method for challenging the facial validity of a statute. *State v. McKee*, 253 Neb. 100, 568 N.W.2d 559 (1997). Hookstra adduced no evidence at trial, was found guilty, and was fined $100 plus court costs. The district court for Lancaster County affirmed Hookstra's conviction. Hookstra timely appealed.

## ASSIGNMENT OF ERROR

Hookstra assigns as error, restated, that the district court's ruling that § 9.08.050 is not, on its face, an unconstitutional infringement of free speech because of its vagueness and overbreadth.

## STANDARD OF REVIEW

■ The Court of Appeals has jurisdiction to decide the constitutionality of a municipal ordinance. See *State v. Champoux*, 5 Neb. App. 68, 555 N.W.2d 69 (1996). The constitutionality of an ordinance is a question of law, regarding which an appellate court has an obligation to reach a conclusion independent of the decision reached by the trial court. *Id.*

## ANALYSIS

■ Hookstra argues that the First Amendment bars his conviction because the Lincoln ordinance under which he was convicted is facially overbroad and vague. A facial challenge asserts that no valid application of a statute exists because it is unconstitutional on its face. *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996). The doctrine of overbreadth pertains to a statute that is designed to burden, punish, or prohibit an activity that is not constitutionally protected, but which includes within its scope activities that are protected by the First Amendment to the U.S. Constitution. *State v. Schmailzl*, 243 Neb. 734, 502 N.W.2d 463 (1993). Speech protected by the First Amendment to the U.S. Constitution includes the free expression or exchange of ideas,

the communication of information or opinions, and the dissemination and propagation of views and ideas, as well as the advocacy of causes. *McKee, supra.* The overbreadth doctrine departs from traditional rules of standing, enabling persons who are themselves unharmed by a statute to challenge it facially on the ground that it may be applied unconstitutionally to others in situations not before the court, and derives from recognition that unconstitutional restriction of expression may deter protected speech by parties not before the court and thereby escape judicial review. *Desnick v. Dept. of Prof. Reg.*, 171 Ill. 2d 510, 665 N.E.2d 1346, 216 Ill. Dec. 789 (1996). See *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987).

Hookstra does not argue that the evidence does not sustain his conviction if the ordinance is constitutional. Thus, as a facial challenge to the ordinance, Hookstra's actions are of secondary importance. At issue is the facial invalidity of the ordinance and not whether Hookstra has improperly been denied the right of free speech. In a facial challenge to the overbreadth and vagueness of an ordinance, a court's first task is to determine whether the ordinance reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge fails. The court then examines the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, upholds the challenge only if the enactment is impermissibly vague in all its applications. *State v. Groves*, 219 Neb. 382, 363 N.W.2d 507 (1985).

Hookstra alleges violations of both Nebraska and federal constitutional provisions governing due process and free speech. We note that article I, § 5, of the Nebraska Constitution, providing that every person "may freely speak . . . being responsible for the abuse of that liberty," does not provide any greater protection regarding the overbreadth of statutes than does the 1st Amendment to the U.S. Constitution, which prohibits the Congress and, through the 14th Amendment, the several states from making any law "abridging the freedom of speech." *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). Thus, we need not address Hookstra's state and federal constitutional claims separately.

*Overbreadth.*

"A statute may be invalidated on its face . . . only if its overbreadth is 'substantial,' i.e., when the statute is unconstitutional in a substantial portion of cases to which it applies." *Id.* at 238, 450 N.W.2d at 406. The requirement that the overbreadth be substantial arose from a recognition that the application of the overbreadth doctrine is " ' " "manifestly strong medicine," ' " and that " ' " "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." ' " *Kipf,* 234 Neb. at 238, 450 N.W.2d at 406, quoting *Airport Comm'rs v. Jews for Jesus, Inc.,* 482 U.S. 569, 107 S. Ct. 2568, 96 L. Ed. 2d 500 (1987).

To support his overbreadth claim, Hookstra relies heavily on *Houston v. Hill,* 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987), by comparing Lincoln's ordinance to a city ordinance in *Hill* which the court found to be facially overbroad. In *Hill,* the pertinent portion of the ordinance made it unlawful for any person to " ' " in any manner . . . interrupt any policeman in the execution of his duty . . . ." ' " 482 U.S. at 455. Similar to the State's argument here, the city of Houston argued in *Hill* that its ordinance banned " ' core criminal conduct' " not protected by the First Amendment. 482 U.S. at 459. The majority disagreed, concluding that "interrupting" a police officer meant verbal interruption and that therefore the ordinance dealt not with core criminal conduct, but with speech. Because the ordinance criminalized verbal interruption of an officer "in any manner," the ordinance swept beyond unprotected speech, such as "fighting" words, thereby encompassing constitutionally protected expression, and invited unfettered police discretion in enforcement of the ordinance. Nor·could the plain, unambiguous language of the ordinance be "cured" with a limiting construction because the enforceable portion of the ordinance amounted to "a general prohibition of speech that 'simply has no core' of constitutionally unprotected expression to which it might be limited." *Id.* at 468, quoting *Smith v. Goguen,* 415 U.S. 566, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974). *Hill* stands for the proposition that an unambiguous ordinance directed at pure speech is constitutionally suspect if it reaches expression beyond unprotected speech,

i.e., "'fighting' words," *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942), and therefore, the Houston ordinance did not receive a limiting construction. See, also, *Milwaukee v. Wroten*, 160 Wis. 2d 207, 228-29, 466 N.W.2d 861, 869 (1991) (following resisting officer ordinance was overbroad and incapable of limiting construction: "Whoever . . . shall resist, or any way interfere with any police officer . . . in the discharge of his duty . . . .").

Hookstra argues that the Lincoln ordinance sweeps more broadly than the ordinance in *Hill* because a peace officer's "order" need have nothing to do with interference with or interruption of police duties. Thus, he argues, because police officers are practically always performing "official duties," under Lincoln's ordinance, an officer could order a citizen to speak, to speak falsely, or not to witness "things a citizen has [the] right to observe" such as the Rodney King incident, whether such activities interfere with police work or not. Brief for appellant at 24. In other words, he argues, the ordinance does not limit the scope of permissible "orders" for which there can be prosecution; therefore, the ordinance reaches constitutionally protected expression and is overbroad.

However, the Lincoln ordinance is distinguishable from the ordinance invalidated in *Hill, supra.* Reducing each ordinance to the proscribed criminal conduct, the ordinance in *Hill* prohibited *interrupting* an officer executing police duties, whereas Lincoln's ordinance prohibits *disobeying* an order given by an officer executing police duties. Therefore, while it is true (1) that Lincoln's ordinance encompasses a wider range of proscribed activity than the ordinance in *Hill*, given the fact that a police officer's "order" may conceivably concern speech or conduct, and (2) that the language defining the nature and extent of an officer's order "made in the performance of official duties" is ambiguous, it is precisely these characteristics, as we will later discuss, which render the Lincoln ordinance susceptible to a limiting construction, which was impossible to do with the ordinance in *Hill*. See, e.g., *Cleveland v. Fisher*, 62 Ohio Misc. 2d 792, 611 N.E.2d 1016 (1992) (where not only speech but also conduct is implicated in reach of legislative enactment, enactment will be declared overbroad only if overbreadth is judged to

be both real and substantial, in relation to enactment's plainly legitimate sweep); *Scheunemann v. City of West Bend*, 179 Wis. 2d 469, 507 N.W.2d 163 (Wis. App. 1993) (degree of acceptable overbreadth of ordinance will depend on where regulated activity falls on continuum of pure speech at one extreme and pure conduct on other). Stated differently, unlike the ordinance in *Hill*, the Lincoln ordinance is not "susceptible of regular application to protected expression," because depending on the order given, the ordinance does not solely punish spoken words or expressive conduct as did the ordinance in *Hill. Houston v. Hill*, 482 U.S. 451, 467, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). Consequently, the finding of overbreadth in *Hill* does not compel the conclusion that the Lincoln ordinance is overbroad.

The State, on the other hand, points to several cases from other jurisdictions in which courts have rejected overbreadth challenges to ordinances penalizing "obstruction" of police officers, *Wilkerson v. State*, 556 So. 2d 453 (Fla. App. 1990), and *Seattle v. Abercrombie*, 85 Wash. App. 393, 945 P.2d 1132 (1997), or "interfering" with police officers, *Fair v. City of Galveston*, 915 F. Supp. 873 (S.D. Tex. 1996), *aff'd* 100 F.3d 953 (5th Cir.). The State argues that the Lincoln ordinance, similar to the "obstruction" ordinances discussed in those cases, penalizes criminal *conduct* and not speech. The trial court reasoned similarly, upholding the Lincoln ordinance because "violations occur through defendant's conduct, which differentiates it from the ordinance in City of Houston v. Hill." However, we disagree with this reasoning, as the plain language of Lincoln's ordinance does not solely penalize conduct because an officer's order to do or not to do something could easily involve speech, conduct, or a combination thereof. In fact, as Hookstra points out, Lincoln has separate ordinances which penalize "interference" with an officer making an arrest, Lincoln Mun. Code § 9.08.020 (1997), and "resistance" to an officer making an arrest, Lincoln Mun. Code § 9.08.030 (1997). Alternatively, the State argues that a narrowing construction renders the Lincoln ordinance valid. While the State's cited authority does not involve ordinances penalizing the mere failure to comply with an order as the Lincoln ordinance does, those cases demonstrate that disorderly conduct and obstruction of police officer statutes

can be construed to meet constitutional requirements. We find that the Lincoln ordinance is susceptible to a narrowing construction, and we therefore turn to the rules governing analysis of a facial challenge to the constitutionality of a statute.

Several well-established rules govern statutory construction when the constitutionality of a statute or ordinance has been attacked. A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality, *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000), and the unconstitutionality of a statute must be clearly established before it will be declared void, *Dykes v. Scotts Bluff Cty. Ag. Socy.*, 260 Neb. 375, 617 N.W.2d 817 (2000). See *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999). The duty of the courts to uphold legislation if possible applies with particular emphasis to exercises of the police power. 16A Am. Jur. 2d *Constitutional Law* § 172 (1998). Thus, a statute challenged as overbroad should be construed so as to avoid constitutional problems if it is subject to such a limiting construction, *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987), and if such a construction can be reasonably accomplished, *State v. Divis*, 256 Neb. 328, 589 N.W.2d 537 (1999). Finally, while an appellate court is obligated to adopt a valid construction when an ordinance is susceptible to either a valid or an unconstitutional construction, see *Burke, supra*, it cannot "cure" an unambiguous, overbroad penal ordinance directed solely at speech with a limiting construction. *Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987).

The Lincoln ordinance penalizes the intentional or knowing "refus[al] to comply with an order of a police officer made in the performance of official duties at the scene of an arrest, accident, or investigation." § 9.08.050. The phrase "official duties" connotes orders made while officers are acting in their capacity as police officers. "Official" means "[o]f or relating to an office or position of trust or authority" or "[a]uthorized or approved by a proper authority." Black's Law Dictionary 1114 (7th ed. 1999). The Lincoln ordinance also requires that an officer's order be made at the scene of an arrest, accident, or investigation. Admittedly, this phrase encompasses much of the activity a peace officer engages in, especially since we have recognized a

peace officer's general duty to "keep the peace" at all times. See *State v. Wilen*, 4 Neb. App. 132, 539 N.W.2d 650 (1995).

In affirming Hookstra's conviction, the district court stated that "[t]he arguments of [Hookstra] ignore the condition of the statute that the order be made 'in the performance of official duties.'" We agree. "Official" duties means those duties performed while enforcing state, local, or federal law. Before the disobedience of an order made in the performance of official duties can be criminalized, the order must be lawful, i.e., does not offend state, local, or federal law. Therefore, we construe the word "order" in the Lincoln ordinance by adding the "gloss" that it be a "lawful order."

This limiting construction distinguishes the Lincoln ordinance from that invalidated in *Hill*, 482 U.S. at 455 (ordinance held overbroad which penalized "interruption" of any police officer in any manner " ' " in the execution of his duty " ' " ). Unlike Houston's ordinance in *Hill*, Lincoln's ordinance is narrowly tailored, because given our construction, it prohibits noncompliance with only those police orders which are lawful. Officers are not always engaged in official duties, nor are they always "at the scene of an arrest, accident, or investigation" as the ordinance requires. Consequently, the "official duties" limitation of the ordinance, together with the requirement that the order be "lawful," prevents unconstitutional police activity, such as interference with protected speech, while sufficiently narrowing the scope of proscribed conduct, for instance, the failure to leave a crime scene so as to avoid contamination of evidence. See *Com. v. DeFrancesco*, 481 Pa. 595, 393 A.2d 321 (1978) (concluding that disorderly conduct statute penalizing refusal to comply with dispersal order was not so broad as to permit police unfettered discretion in enforcement).

Hookstra points out that almost all official police work involves "investigation" and that thus, the ordinance has "a chilling effect on First Amendment rights." Brief for appellant at 12. However, any order must conform to the law and must be made during "official duties." For example, Hookstra's claim that the ordinance would permit an officer to order onlookers to remove their clothing is without merit because such order violates Neb. Rev. Stat. § 28-806 (Reissue 1995) (public indecency) or Neb.

Rev. Stat. § 28-805 (Reissue 1995) (debauching a minor) and therefore such order would be unlawful and unenforceable. Moreover, the U.S. Supreme Court has held that "one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution." *Wright v. Georgia*, 373 U.S. 284, 291-92, 83 S. Ct. 1240, 10 L. Ed. 2d 349 (1963). Thus, failing to comply with an order directed at pure speech, unless the speech constitutes "fighting words," is not punishable under the Lincoln ordinance.

■ We return to Hookstra's burden of proof: In order to prevail in a facial attack to the constitutionality of an ordinance on the ground of overbreadth, Hookstra must show either (1) that every application of the ordinance creates an impermissible risk of suppression of ideas or (2) that the ordinance is "substantially" overbroad, which requires the court to find a realistic danger that the ordinance itself will significantly compromise recognized First Amendment protections of parties not before the court. See, *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). See, also, *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991). In his brief, Hookstra points to hypothetical situations where Lincoln's ordinance would unconstitutionally restrict free speech, but if the order is lawful, as we have required, this argument fails. Moreover, an ordinance is not rendered unconstitutionally overbroad simply because in hypothetical situations, speech which would ordinarily be constitutionally protected could be impacted or curtailed. *Houston v. Hill*, 482 U.S. 451, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987); *Milwaukee v. Wroten*, 160 Wis. 2d 207, 466 N.W.2d 861 (1991). See, also, *Harper v. Crockett*, 868 F. Supp. 1557 (E.D. Ark. 1994) (police department rule prohibiting conduct unbecoming officer was not unconstitutionally overbroad because it might impact constitutionally protected speech in hypothetical situations). Hookstra has not shown, nor does he argue, that every application of Lincoln's ordinance creates an impermissible risk of suppression of ideas or speech. Nor does he address why Lincoln's ordinance, which is presumed constitutional and which must be given a valid construction even if constitutionally suspect, is not subject to a limiting construction.

Hookstra has not shown that Lincoln's ordinance will significantly compromise others' First Amendment rights. Admittedly, officers' orders under the Lincoln ordinance could impact speech, conduct, or a combination thereof. Although "conduct" may entail some elements of expression or speech, when "speech" and "nonspeech" are combined in a citizen's activities, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. *Major Liquors, Inc. v. City of Omaha*, 188 Neb. 628, 198 N.W.2d 483 (1972). See, also, *In re Anderson*, 69 Neb. 686, 96 N.W. 149 (1903) (Omaha ordinance penalizing distribution of circulars on public streets and sidewalks was not invalid simply because it may have incidentally affected exercise of First Amendment rights); *State v. Martin*, 532 P.2d 316 (Alaska 1975) (under disorderly conduct statute, court interpreted "lawful order" as one where person's conduct or speech substantially impedes officer during arrests, investigations, or other actions ensuring public safety). Furthermore, a state can curtail speech when necessary to advance a significant and legitimate state interest, and a legislature has discretion in determining what measures are reasonably necessary to protect public health, safety, and welfare. *State v. Schmailzl*, 243 Neb. 734, 502 N.W.2d 463 (1993). Finally, protected speech may be subject to reasonable time, place, and manner restrictions. *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996).

Given the State's authority to curtail expression when legislating for the public welfare, together with our requirement that orders from peace officers be lawful in a prosecution under the Lincoln ordinance, the ordinance does not significantly compromise citizens' First Amendment rights. The Lincoln ordinance applies to many situations in which speech is not involved, and those situations in which it would restrict pure speech seem comparatively few. The ability to conceive of an unconstitutional application or to hypothesize situations in which the language of the ordinance reaches protected expression does not amount to real and substantial overbreadth. *Houston v. Hill, supra*; *Milwaukee v. Wroten, supra* (striking down resisting officer ordinance as overbroad). Moreover, while the language in Lincoln's ordinance is admittedly broad, the

First Circuit Court of Appeals, in addressing an overbreadth challenge, has held that the statutory language which forbids failing " '[to] comply with . . . the direction of Federal protective officers' " cannot be made much more precise "without significantly impeding the government's ability to achieve the legitimate objectives at which the [failure to comply] regulation is aimed." *United States v. Bader*, 698 F.2d 553, 556 (1st Cir. 1983).

The Supreme Court of Alabama recently rejected an overbreadth challenge to a city ordinance nearly identical to the Lincoln ordinance. See *Ex parte Battles*, 771 So. 2d 503 (Ala. 2000). In *Ex parte Battles*, the ordinance penalized " ' fail[ing] to obey the direction or order of a member of the police department of the city while such member is acting in an official capacity in carrying out his duties.' " *Id*. at 504. Similar to Hookstra's argument here, Battles argued that the city ordinance was overbroad because there was no limit to its scope. Disagreeing, the Alabama Supreme Court reached the same conclusion that we have:

> The ordinance is in fact limited in scope; it restricts itself to any order made by an officer "acting in an official capacity in carrying out his duties." *An officer can give only lawful orders if he is acting in his official capacity*. If an officer's order is unlawful, then, in giving the order, the officer is no longer acting within his official capacity.

(Emphasis supplied.) *Id*. at 505. Federal courts have likewise upheld laws penalizing noncompliance with an officer's order. See, *United States v. Bader, supra* (regulation forbidding failure to obey directives of federal protective officers was not unconstitutionally overbroad); *United States v. Shiel*, 611 F.2d 526 (4th Cir. 1979) (holding that regulation requiring persons on government property to comply with posted signs and orders of federal officers, when construed as extending only to proper orders, was not overbroad). Compare *State v. Nickerson*, 120 N.H. 821, 424 A.2d 190 (1980) (holding that disorderly conduct statute penalizing refusal to comply with lawful order to disperse was overbroad because police have unfettered discretion under statute's language).

The thrust of Hookstra's argument is that "in a free country, persons may not be lawfully required to 'follow orders' of any

person in uniform," and we obviously reject that argument because it overreaches. Reply brief for appellant at 4. Although the First Amendment permits scrutiny and criticism of police work, "there is a fine line between legitimate criticism of police and the type of criticism that interferes with the very purpose of having police officers." *Houston v. Hill*, 482 U.S. 451, 480, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (Powell, J., concurring in part and dissenting in part). Given our limiting construction, Lincoln's ordinance is a constitutionally permissible prohibition of a citizen's refusal to comply with lawful orders given by police during arrests, accidents, or investigations. In some instances, First Amendment rights "are subject to the elemental need for order without which the guarantees of civil rights to others would be a mockery." 16A Am. Jur. 2d *Constitutional Law* § 492 at 495 (1998). In conclusion, Lincoln's ordinance may impact protected speech while reaching unlawful conduct (e.g., citizen trampling over murder crime scene can be ordered to leave and can be prosecuted if he or she does not, even though he or she is also telling onlookers his or her opinion of the 2000 presidential election). See authority cited *infra*. However, that effect does not invalidate the ordinance on its face and prevent the city from using the ordinance against conduct which is unlawful, in our example, the citizen's contamination of the crime scene. Having found that Lincoln's ordinance is not substantially overbroad, we turn to the issue of the ordinance's alleged vagueness.

*Vagueness.*

The void-for-vagueness doctrine requires that a penal ordinance or statute define the criminal offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited and so that the language of the ordinance or statute does not encourage arbitrary and discriminatory enforcement. See *State v. Beyer*, 260 Neb. 670, 619 N.W.2d 213 (2000). The test for determining whether a statute is vague is whether it forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and may differ as to its application. *State v. Irons*, 254 Neb. 18, 574 N.W.2d 144 (1998). To have standing to assert a claim

of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute and cannot maintain that the statute is vague when applied to the conduct of others. *Id.*

Here, Hookstra's conduct clearly meets the elements of the Lincoln ordinance, which requires that (1) a peace officer give a lawful order; (2) the officer is performing official duties; (3) the incident occurs at the scene of an arrest, accident, or investigation; and (4) the defendant intentionally or knowingly refuses to comply with the officer's order. Officer Evans testified that he ordered Hookstra to leave the scene several times after he had placed the DUI suspect in his patrol car. Officer Evans was undisputedly conducting a DUI investigation, an obviously official function, in downtown Lincoln when he ordered Hookstra to leave the area.

Officer Evans' order was lawful. The evidence was that Hookstra and his two friends began yelling at Officer Evans during his DUI investigation and were yelling to the suspect to not cooperate with Officer Evans. The DUI investigation occurred at 1:30 a.m., shortly after the numerous downtown bars close. The investigation was taking place in the street in downtown Lincoln, and Hookstra's yelling made the suspect nervous and upset. Therefore, Officer Evans had legitimate concerns about his own safety and that of the DUI suspect and thus was well within his authority in ordering Hookstra to leave the area for everyone's safety. Officer Evans testified that "I was giving [Hookstra] orders to leave that area so I could finish my investigation." Clearly, an officer may order onlookers whose disruptive behavior poses a threat to the safety of the officer and his suspect to leave the scene of an arrest. See, *Seattle v. Abercrombie*, 85 Wash. App. 393, 945 P.2d 1132 (1997) (ability of police officers to restrict public access to crime scene serves significant governmental interest both in facilitating thorough investigation and ensuring safety of everyone at scene); *Wilkerson v. State*, 556 So. 2d 453, 456 (Fla. App. 1990) (under Florida statute penalizing obstruction of police work "[p]olice officers may lawfully demand that citizens move on and away from the area of a crime without impermissibly infringing upon the citizen's First Amendment rights"); *State v. Manning*, 146

N.J. Super. 589, 591, 370 A.2d 499, 500 (1977) (under New Jersey statute penalizing interference with police work, court found it "perfectly reasonable" for arresting officer to require no distraction from passenger when conducting DUI investigation).

Hookstra intentionally or knowingly refused to comply with Officer Evans' lawful orders to leave the area. Despite Officer Evans' orders to leave, Hookstra remained on the corner sidewalk. After the orders, Hookstra's two companions tugged on his clothing and pleaded with him to leave, thus indicating that the companions "understood the order and the need to comply." Brief for appellee at 15.

Because Hookstra's conduct clearly falls within that proscribed by Lincoln's failure-to-comply ordinance, he lacks standing to raise the issue of the ordinance's vagueness. We note that Hookstra does not challenge the sufficiency of the evidence to show a violation of the ordinance if it is constitutional. Having found no merit to Hookstra's overbreadth claim, we uphold the constitutionality of the ordinance and affirm the conviction.

AFFIRMED.