James L. HUTCHINSON,
Plaintiff/Appellant,

v.

John GRANT, Does One Through Ten, individually and in their official capacity as Police Officers of the Town of Hillsborough, California, Defendants/Appellees.

No. 85–2154.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1986.

Decided Aug. 5, 1986.

Merrill G. Emerick, Manaco, Anderlini & Finkelstein, San Mateo, Cal., for plaintiff/appellant.

Steven C. Wolan, Patton, Wolan & Boxer, Oakland, Cal., for defendants/appellees.

Before PREGERSON, POOLE, and JOHN T. NOONAN, Jr., Circuit Judges.

NOONAN, Circuit Judge.

Dr. James Hutchinson appeals from a summary judgment entered against him in a civil rights action brought by him under 42 U.S.C. §§ 1983 and 1985(3) against Officer John Grant and the Town of Hillsborough. We affirm the judgment as to Hillsborough and reverse and remand as to Officer Grant.

*Undisputed Events.* At 8:00 p.m. on the evening of June 25, 1983 Dr. James Hutchinson, a resident of Hillsborough for twenty years, was strolling near his home. He was accosted from a police cruiser by Officer John Grant, a Hillsborough policeman, who asked Dr. Hutchinson to identify himself. Dr. Hutchinson replied that he was Dr. Hutchinson. He added that he was a resident of Hillsborough. Officer Grant swung his car around, got out, and, leaving a police dog in the cruiser, approached Dr. Hutchinson and asked him to stop. Dr. Hutchinson continued walking. Officer Grant took hold of him, took away his walking cane, marched him to the patrol car, patted him down, and handcuffed him. Shortly thereafter, Officer Ransom arrived and identified Dr. Hutchinson as a resident of the community, and he was released.

Over three weeks earlier the Hillsborough police had arrested a man who identified himself as Captain Peter Hutchinson. He pled *nolo contendere* to charges of trespassing and vandalism, was sentenced to twelve months' probation, and released on June 14, 1983. Some days later, before the incident with Dr. Hutchinson, Hillsborough police investigated a break-in at the same vacant house where Peter Hutchinson had trespassed in May. The police formed the belief that he had returned to the scene of his earlier crime and began to patrol the area regularly, looking for Peter Hutchinson.

On June 28, 1983, three days after the incident involving Dr. Hutchinson, the police found Peter Hutchinson's fingerprints at the vacant house. On the same day the police obtained a warrant for Peter Hutchinson's arrest.

Neither side disputes that these things happened. What is disputed are the following:

*Disputed Facts*

1. How Dr. Hutchinson responded to Officer Grant. Dr. Hutchinson says that he extended his hand in greeting. Officer Grant says that Dr. Hutchinson's behavior was uncooperative and evasive.

2. What Officer Grant said to Dr. Hutchinson after he first addressed him. Dr. Hutchinson says Officer Grant said, "I don't give a damn about nigger walkers." Officer Grant denies saying anything of the sort.

3. The force with which Dr. Hutchinson was handcuffed. Dr. Hutchinson says that he was wrenched and that he was forced over the hood of the patrol car. Officer Grant acknowledges only that he handcuffed him.

4. The time the Hillsborough police received and disseminated information as to Peter Hutchinson's past record of arrests and convictions. The defendants say that a summary of the record of Peter Hutchinson was transmitted to the Hillsborough police by telephone by the FBI from Washington after June 14, 1983 but well before June 25, 1983. Dr. Hutchinson maintains that the written record—"the rap sheet"—was not obtained until 11:30 p.m. on the night of June 25, 1983. He does not concede that Officer Grant was familiar with Peter Hutchinson's record before this time.

5. The basis on which Officer Grant acted. Officer Grant says that the description of Peter Hutchinson both as to physical appearance and as to clothes, the similarity of names, and the belief that Peter Hutchinson had recently been committing crimes in the neighborhood was the basis for his actions toward Dr. Hutchinson. Dr. Hutchinson denies that there was sufficient similarity between him and Peter Hutchinson and sufficient proximity in time and space of Peter Hutchinson's suspected break-in to account for Officer Grant's conduct.

6. The injuries suffered by Dr. Hutchinson. Dr. Hutchinson says that he suffered pain and an injury to the wrist (a carpal tunnel syndrome), for which he eventually had surgery, as a result of the handcuffing. He also says that he was emotionally upset and sought psychiatric counseling as a consequence of what happened. Officer Grant does not concede that these injuries resulted from his actions.

*Issues.*

1. Are material facts in dispute as to Officer Grant's liability under 42 U.S.C. § 1983?

2. Are material facts in dispute as to the Town of Hillsborough's liability under 42 U.S.C. § 1985(3)?

*Analysis.* If there are disputed material issues of fact, summary judgment cannot be granted. *Allen v. A.H. Robbins Co.,* 752 F.2d 1365, 1368 (9th Cir.1985). In this case such issues of fact exist and must be resolved by a jury.

■■■ The governing rule has been established by *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). *See id.* at 555, 87 S.Ct. at 1218. A police officer has immunity if he arrests with probable cause. As Chief Justice Warren put it, "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Id.* The immunity in performing such a discretionary function as arresting or detaining a suspect is established by an objective standard, not by examination of the subjective state of mind of the officer. *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982); *see also Malley v. Briggs,* — U.S. ——, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (applying *Harlow* standard to a police officer).

■■■ Could the district court rule as a matter of law that Officer Grant had probable cause to arrest Dr. Hutchinson or to subject him to *Terry* stop detention? *See Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880–81, 20 L.Ed.2d 889 (1968). For probable cause to be present, a police officer would have to have a reasonable belief that Dr. Hutchinson had just committed or was committing or was about to commit a crime. Insufficient evidence existed for the court to hold as a matter of law that such a belief could reasonably have been found.

■■■ *Terry* permits brief detention "of a suspicious individual to maintain the status quo while obtaining more information even though the officer lacks probable cause to arrest the individual." *United States v. Jacobs,* 715 F.2d 1343, 1345 (9th Cir.1983). A valid stop does not become an arrest merely because the police "momentarily" restrict the individual's freedom of movement. *Id.* Nor does the use of force convert the stop into an arrest if the force is used under circumstances justifying the police officer's fear for his personal safety. *Id.* at 1345–46. If Officer Grant's account is believed, he may well have been making a valid *Terry* stop. However, if Dr. Hutchinson's account is believed, Officer Grant did not have a basis for suspecting him of any crime. A jury should decide whose account is correct.

Looking at the evidence from the point of view most favorable to the appellant and assuming its truth, as we must on this appeal, *Allen,* 752 F.2d at 1368, Officer Grant rashly and with racial prejudice leaped to the conclusion that a resident of Hillsborough, out for his evening stroll, was a suspect in a burglary committed a mile away a week earlier. He had been given sufficient information by Dr. Hutchinson to verify his identity, and indeed his

identity was fairly shortly verified. But without waiting for the verification and using deeply offensive language, Officer Grant employed unnecessary force to subdue Dr. Hutchinson. · Without probable cause he arrested him. This outrage committed on a citizen exercising his right to walk on a public street caused Dr. Hutchinson physical pain, physical injury, and emotional harm. It was a violation of rights, privileges, and immunities "secured by the Constitution and the laws." 42 U.S.C. § 1983. Dr. Hutchinson is entitled to have a jury assess the accuracy of his account.

■ Even from the point of view most favorable to Dr. Hutchinson, there is no evidence that the Town of Hillsborough conspired to violate 42 U.S.C. § 1985(3) by depriving him of the equal protection of the law or equal privileges and immunities under the law. Counsel for Dr. Hutchinson point to police activity after the arrest in regard to Peter Hutchinson as evidence of a cover-up, designed in some way to excuse Dr. Hutchinson's arrest. Nothing the police did subsequent to the incident with Dr. Hutchinson could affect Hillsborough's liability for the incident. The allegation of conspiracy has no foundation in fact.

AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.