**Mark O. TURNER, Plaintiff,**

v.

**COUNTY OF WASHOE, Jeffrey B. Pepper, Timothy John Ryan, Robert Preston Campbell, and Vincent G. Swinney, Defendants.**

**No. CV–S–90–706–PMP (LRL).**

United States District Court,
D. Nevada.

Feb. 20, 1991.

Robert R. Hager, Mark Mausert, Hager & Mausert, Reno, Nev., for Turner.

Ken Bick, Reno, Nev., for Pepper, Ryan, Campbell and Swinney.

Thomas F. Riley, Deputy Dist. Atty., Reno, Nev., for Washoe County.

## MEMORANDUM DECISION AND ORDER

PRO, District Judge.

Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 in which he alleged that the County of Washoe, its sheriff and three of its deputy sheriffs were responsible for violating his civil rights. The complaint also contains numerous pendent state claims. The genesis of this action involves the arrest of Plaintiff, which he alleges was unlawful and during which the deputy officer used excessive force and then denied him adequate medical care. Pending at this time are motions for summary judgment filed by the individual Defendants (# 29) and the County of

Washoe (# 30). All parties have retained counsel.

## I. FACTS

On June 24, 1986, Washoe County Deputy Sheriff Pepper stopped a vehicle for speeding as it left an area in which a possible burglary had been reported.[1] After waiting for a period of time [2] in the hot sun in a convertible car, Plaintiff exited the stopped car and began to approach the patrol car. Deputy Pepper told Plaintiff to return to his car. After an additional delay, Plaintiff again began approaching the patrol car, at which time Deputy Pepper told Plaintiff to return to his car or he would be arrested. Plaintiff told him to go ahead and arrest him and continued approaching the patrol car. While Plaintiff was being handcuffed, he turned his head to advise Deputy Pepper that he had a bad shoulder and to be careful. At that moment, Plaintiff was thrust onto the hood of the patrol car, and the handcuffing was completed. He was then placed into the back of the patrol car. Because Plaintiff was complaining that his shoulder was feeling "strained" while in transit to the sheriff's headquarters, Deputy Pepper stopped and adjusted the handcuffs so that Plaintiff's hands were in front instead of behind him.

While being booked, Plaintiff complained his shoulder hurt and demanded medical attention. He was taken to the hospital. Because of the apparent hostility between Plaintiff and Deputy Pepper, Defendant Deputy Campbell was called to obtain certain information from Plaintiff needed to complete the police reports. At first, Plaintiff wanted the doctor who had previously operated on his shoulder to conduct the examination, but when told that said individual was not available, the staff proceed-

1. The constitutionality of the traffic stop is not an issue in this action. The driver was simply warned about speeding and released.

2. Deputy Pepper asserts that due to the terrain he was having trouble contacting the dispatcher to report that he had stopped a vehicle. Nevertheless, he claims that the delay was only about 30 seconds, whereas Plaintiff, a passenger in the stopped car claims that he waited 10 minutes before getting out of his car and approaching Deputy Pepper's patrol car to inquire about the stop. Plaintiff's wife, the driver of the stopped car, claimed that Plaintiff waited as long as 15 minutes before exiting the car. Although this fact is clearly disputed, based on the issues under consideration, it is not a material fact which precludes determination of the issues via summary judgment.

ed to treat Plaintiff. X-rays did not disclose any internal damage. Plaintiff was provided with a shoulder sling to immobilize the arm and released with a prescription for medication to relieve any pain. Plaintiff's wife posted bail that afternoon and he was released. One month short of two years later,[3] Plaintiff underwent surgery to correct ligament and muscular damage to the shoulder which had been injured many years before and "strained" during the arrest.

As a result of the arrest, Defendant Deputy Ryan caused Plaintiff's concealed firearm permit to be revoked, and the Reno Police Department was notified of the revocation.[4] Defendant Deputy Ryan apparently also had some contact with some of the clients for whom Plaintiff provided security via his private security company.

## II. MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56, Fed.R. Civ.P. The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982). Once the movant presents evidence which, if uncontroverted, would entitle the movant to a directed verdict a trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show

that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982).

When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party," *Adickes v. S.H. Kress and Co.*, 398 U.S. at 157, 90 S.Ct. at 1608, and it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Halet v. Wend Investment Co.*, 672 F.2d 1305 (9th Cir.1982). Furthermore, allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Finally, summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett, supra.*

## III. PLAINTIFF'S CLAIMS

### A. *Unlawful Arrest*

Plaintiff contends that Deputy Pepper violated his civil rights by subjecting him to an arrest without probable cause that Plaintiff had committed an arrestable offense. It has long been established law that a police officer who arrests with probable cause is immune from suit in a civil

---

**3.** The day before the two year statute of limitations expired, Plaintiff filed this civil rights action.

**4.** Plaintiff is a former police officer with the Reno Police Department.

rights action.[5] *See Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and its progeny. Conversely, a police officer who arrests without probable cause has committed a civil rights violation. Whether a police officer had probable cause to arrest is ascertained by looking at the facts known to the officer at the time of the arrest[6] and determining whether a reasonably prudent police officer could have believed that the suspect had committed or was committing an arrestable offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). The standard of review is an objective one and not a subjective one, for the actual intent of the arresting officer is not material to determining whether probable cause existed.[7] "If subjective good faith alone were the test, the protection of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Beck v. Ohio*, 379 U.S. at 97, 85 S.Ct. at 229. In this regard, Plaintiff's reliance on *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir.1985), is misplaced.[8] Lastly, whether probable cause existed is a question of law; "[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck v. Ohio*, 379 U.S. at 96, 85 S.Ct. at 228, quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

■ The material facts giving rise to the arrest are not in dispute. As Plaintiff approached the patrol car, Deputy Pepper ordered him to return to his car and wait there. Plaintiff went back and waited near the rear of his car. When Plaintiff approached the patrol car a second time, Deputy Pepper ordered Plaintiff to again return to his car or he would be arrested. Plaintiff told Deputy Pepper to go ahead and arrest him, which was done.[9] "The crime of resisting a public officer is complete when one willfully resists, delays or obstructs a public officer in discharging or attempting to discharge any legal duty of his office." *McKinnon v. State of Nevada*, 96 Nev. 821, 618 P.2d 1222, 1222 (1980). *See* § 199.280, Nev.Rev.Stat. Thus, the offense was complete when Plaintiff disobeyed Deputy Pepper's order. *See also, Patterson v. State*, 191 Ga.App. 359, 381 S.E.2d 754 (1989) (defendant's refusal to return to his car during a traffic stop amounted to obstructing a policy officer in

---

**5.** Although the cases refer to this protection from suit as "immunity", the term is a misnomer. For there to be immunity, there is the concomitant connotation that a violation of one's civil rights has occurred, but because of some overriding public policy, a suit may not be maintained against the defendant. If an arrest occurs based on probable cause, then there is in fact no violation of one's civil rights, and so there is not a valid claim against which there is the need to assert the immunity shield.

**6.** That fact that the arrestee is later formally charged with the offense for which he was arrested does not moot the need to determine whether the officer possessed sufficient facts to amount to probable cause, because the decision to file formal charges may be based on facts unknown to the arresting officer. Consequently, the fact that Plaintiff plea bargained the charges does not automatically dispose of this issue.

**7.** Accordingly, the operative language in this objective standard is whether a police officer could have believed, as compared to did believe, that probable cause existed; "if officers of rea-

sonable competence could disagree on [whether probable cause exists], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

**8.** Plaintiff cites this case for the proposition that "if an arrest is made in bad faith, there may be a cause of action under [42 U.S.C.] § 1983 as an illegal, unconstitutional arrest." 773 F.2d at 1031. This statement, however, it dictum, for it was not essential to the determination of that action. Additionally, the validity of such statement is questionable in light of subsequent cases. *See, e.g., Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Forster v. County of Santa Barbara*, 896 F.2d 1146 (9th Cir.1990), and *Hutchinson v. Grant*, 796 F.2d 288 (9th Cir.1986).

**9.** Although the facts are in dispute regarding the amount of time involved and the use of profanities towards each other, it is not disputed that Plaintiff heard and understood Deputy Pepper's directive and willingly disobeyed.

the performance of his duties), and *State v. Manning*, 146 N.J.Super. 589, 370 A.2d 499 (1977) (defendant guilty of interfering with police officer when he refused to return to his car during a traffic stop, even though there was no direct contact). Consequently, Deputy Pepper had probable cause to believe that Plaintiff was guilty of "resisting a public officer". The arrest was therefore not in violation of Plaintiff's civil rights. Plaintiff's claim is therefore meritless.

## B. *Excessive Force*

■ The determination of whether a police officer has used excessive force during an arrest is analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*, 109 S.Ct. at 1872. Consequently, an objective standard regarding reasonableness applies.[10] *Id.*

■ Plaintiff contends that while he was being handcuffed, he was "slammed" onto the hood of the patrol car despite not having offered any resistance. Defendant Pepper contends that Plaintiff's movement (apparently when Plaintiff started to turn his head to advise Deputy Pepper about the shoulder) precipitated the use of force. The record does not clearly show exactly what amount of force was used. Nor does the record contain evidence that clearly shows that Deputy Pepper's response to Plaintiff's movement was reasonable. Because the evidence must be viewed in the light most favorable to the non-moving party when deciding a motion for summary judgment, material facts exist which preclude granting summary judgment at this time for Deputy Pepper.

■ Nevertheless, Plaintiff fails to present any facts to show that any of the other named Defendants were personally involved in the alleged use of excessive force. A plaintiff must allege facts that show that an individual was *personally involved* in the deprivation of his civil rights. This is because liability under 42 U.S.C. § 1983 must be based on the personal involvement of the defendant. *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir.1980); *Faye v. Stapley*, 607 F.2d 858, 862 (9th Cir.1979). Liability may not be based on *respondeat superior*. *Monell v. N.Y.C. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Consequently, a claim that fails to show how a defendant was personally involved, or simply states that a defendant is liable because he is the supervisor of another, fails to properly allege the liability of the defendant. Consequently, Plaintiff's claim of excessive force cannot be maintained against Defendants Washoe County, Sheriff Vince Swinney, Deputy Campbell or Deputy Ryan.

## C. *Denial of Medical Care*

Plaintiff claims that Defendants violated his civil rights by denying him adequate medical care. His claim against Deputy Pepper is based on the latter's interfering with his medical treatment, to-wit: "Until he answers my questions nobody goes near him." (Ln. 11–12, p. 152, Plaintiff's Deposition, attached to his Opposition, docket # 30A). His claim against Deputy Campbell is based on the latter's refusal to allow Plaintiff to have his prescription after leaving the hospital.

■ Generally, state officials violate an individual's civil rights when they are deliberately indifferent to his or her serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). One way to prove deliberate indifference is to show that the officials denied, delayed or

**10.** "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.... An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

intentionally interfered with medical treatment. *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir.1988). However, this standard is not directly applicable to this action because it is based on the Eighth Amendment's proscription against cruel and unusual punishment.

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.

*Ingraham v. Wright,* 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977). Until the State acquires the power to punish, an individual in custody is protected by the Due Process Clause of the Fourteenth Amendment. *See City of Revere v. Massachusetts General Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Youngberg v. Romeo,* 457 U.S. 307, 315, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982); *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979). Nevertheless, "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protection available to a convicted prisoner." *City of Revere v. Massachusetts General Hosp.,* 463 U.S. at 244, 103 S.Ct. at 2983.

■ Plaintiff's claim that Deputy Pepper delayed or intentionally interfered with his medical treatment is not supported by the record. Problematic is the fact that Plaintiff only alleges that treatment was delayed for "hours", without assessing who caused how much of the delay. Despite Plaintiff's assertion about Deputy Pepper, the record also shows that Plaintiff caused the medical treatment to be delayed by refusing to provide medical information about himself to the nurses, (P. 147, Plaintiff's Deposition, attached to Defendant's Reply, docket # 39) and by refusing any medical treatment until it was ascertained that the specific doctor who had previously treated his shoulder was not available (Ln 3–4, p. 150, Plaintiff's Deposition, attached to Defendant's Reply, docket # 39). Consequently, any delay in the administration of medical care attributable to Deputy Pepper's action was minor.[11]

■ Plaintiff claims that Deputy Campbell refused to allow him to take the prescribed medication. However, Plaintiff's deposition belies his claim, for he admits that he is not sure that Deputy Campbell ever had the medication.[12] His claim must therefore fail.

### D. *Failure to Train*

[14] Plaintiff contends that Defendant Washoe County failed to take the necessary steps to adequately train its police officers regarding the constitutional and statutory limits on the exercise of their authority. Defendant Washoe County, in its Motion for Summary Judgment (# 30), correctly refers to the controlling stan-

---

**11.** Although the Eighth Amendment standard is not directly applicable as stated earlier, in order to prove a claim of deliberate indifference to a serious medical need based on an alleged delay of interference with medical treatment, a prisoner must show that he suffered "substantial harm" by the delay. *Wood v. Housewright,* 900 F.2d 1332, 1335 (1990).

**12.** Q. Do you ever remember her [Plaintiff's wife] trying to give you the medication at the hospital before you went back to the Washoe County Jail?
A. I believe she did, yes.
Q. Do you actually remember that?
A. Yes.
Q. Did you take it at that time?
A. I wasn't allowed to have it.

Q. Who said you couldn't have it?
A. Campbell.
Q. You actually remember him saying something to the effect, "You can't take that"?
A. No, something to the effect of, "Give it to me."
Q. How did you get it if Deputy Campbell had the actual prescription bottle?
A. It was booked in as part of my property, I guess.
Q. Are you sure?
A. No.
Q. Are you even sure that Deputy Campbell had it at some time?
A. No.
P. 192–93, Plaintiff's Deposition, attached to docket # 30A.

dards and cases in this area. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). "Moreover, for liability to attach[,] ... the identified deficiency in a city's training program must be closely related to the ultimate injury." *Id.,* 109 S.Ct. at 1206. Plaintiff has not presented any argument whatsoever regarding the failure-to-train claim in opposition to Defendant Washoe County's motion; the only argument Plaintiff presents is liability based on *respondeat superior.* See Plaintiff's Opposition, docket # 31. As stated above, liability in a § 1983 action cannot be based on *respondeat superior. Monell v. N.Y.C. Dept. of Social Services,* 436 U.S. at 694, 98 S.Ct. at 2037–38. Accordingly, Plaintiff claim against Washoe County based on a failure to adequately train its police officers must fail.

### E. *Pendent State Claims*

Plaintiff alleges numerous state pendent claims: assault and battery, malicious prosecution, invasion of privacy, defamation, abuse of process, and intentional infliction of emotional distress. The assault and battery claim should remain until the excessive use of force claim is resolved. All of the other pendent claims shall be dismissed.

■ Plaintiff concedes that he cannot maintain a claim for malicious prosecution because the charges against him were plea bargained. Ln. 26–28, p. 16, Plaintiff's Opposition, docket # 30A.

■ The remaining pendent claims pertain to the actions of Deputy Ryan, who was responsible for the investigation of Plaintiff's concealed weapon permit. The claims are essentially based on three occurrences: notice to the Reno Police Department that his concealed weapon permit had been revoked; a conversation with his brother-in-law in which Deputy Ryan inferred that Plaintiff was "crazy"; and conversations with a girlfriend and business client of Plaintiff's during which Deputy Ryan made numerous disparaging remarks and allegations.

Plaintiff claims that a memo was read every day for a week to members of the Reno Police Department stating that Plaintiff had been arrested and that his concealed weapon permit had been revoked. Both facts are true. Moreover, Defendants dispute that such a memo ever existed, and Plaintiff has not been able to produce such a memo nor affidavits from anyone who heard it being read. Lastly, Plaintiff has not been able to present any evidence to show that Deputy Ryan was the individual who produced the memo. Consequently, any claim based on the alleged memo must fail.

■ The alleged conversation Deputy Ryan had with Jon Putnam (Plaintiff's brother-in-law), in which Deputy Ryan asked whether Plaintiff sometimes acts a little "crazy", occurred in late winter/early spring of 1985/1986. Because the limitations period for slander and invasion of privacy is two years (§ 11.190(4)(c), Nev. Rev.Stat.) any cause of action based on that conversation would have had to have been filed prior to early spring 1988. The complaint herein was filed in June 1988, and so is time barred. The court notes that Plaintiff has not attempted to refute Defendant's argument regarding the statute of limitations.

■ The third occurrence involves a conversation Defendant Ryan had with Plaintiff's girlfriend and client during an airplane flight on October 9, 1988. This conversation occurred several months *after* the complaint was filed commencing this action. Defendants contend that since each allegedly slanderous act or invasion of privacy creates a new cause of action, it must be separately plead. Because Plaintiff has never attempted to modify the complaint to include any claim based on this subsequent act, and since the two year statute of limitations has now expired, any claim based on the October 1988 conversation is now time barred. Plaintiff's only

response to this argument is that since both the complaint and the airplane conversation occurred in 1988, the statute of limitations does not preclude a cause of action for defamation. Plaintiff has not adequately refuted Defendant's argument.

Lastly, Plaintiff has not specified how any of the above acts amount to an abuse of process or intentional infliction of emotional distress. Consequently, those claims must also be dismissed.

IT IS THEREFORE ORDERED that the Motion to Dismiss (# 29) filed on behalf of Defendant Pepper is GRANTED regarding all claims except the use of excessive force claim and the pendent state claim of assault and battery, for which the motion is DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss (# 29) filed on behalf Defendants Campbell, Ryan, and Swinney, and the Motion to Dismiss (# 30) filed on behalf of Washoe County are GRANTED. The Clerk of the Court shall enter judgment accordingly.